# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

KAREN FLETCHER,

     Plaintiff,

v.                                                     Case No: 8:25-cv-298-CEH-LSG

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## ORDER

This matter comes before the Court upon the Report and Recommendation of Magistrate Judge Lindsay S. Griffin (Doc. 20).   Magistrate Judge Griffin recommended that the Court affirm the decision of the Commissioner of Social Security denying Plaintiff's claim for supplemental security income benefits.  Plaintiff raises arguments as to the findings of the Administrative Law Judge ("ALJ").

Having reviewed the Report and Recommendation, the parties' filings, and the underlying record, the Court will **ADOPT** the Report and Recommendation of the Magistrate Judge and **AFFIRM** the decision of the Commissioner of Social Security denying Plaintiff's claim for supplemental security income benefits.

## I.      BACKGROUND

Plaintiff Karen Fletcher applied for supplemental security income benefits ("SSI") on July 10, 2021, when she was 51 years old.  Doc. 8-2 at 18[1]; Doc. 8-2 at 32. She alleged disabling medical conditions beginning on May 1, 2021. *Id.* The Commissioner denied Plaintiff's application on April 7, 2022, and again, upon reconsideration, on June 1, 2023. *Id.*

At Plaintiff's request, a hearing was held on March 8, 2024, before Administrative Law Judge ("ALJ") James P. Alderiso. *Id.* at 92. The ALJ heard testimony from Plaintiff and vocational expert Dana Lessne. *Id.* at 93. Plaintiff testified that on May 1, 2021 she suffered a non-psychogenic epileptic seizure that resulted in a bump on her head. *Id.* at 95-96. As a result, she treated with a therapist. *Id.* at 95. At the time of the hearing, Plaintiff was still experiencing spells that made her unstable, and when she was sitting, she experienced continuous and uncontrollable shakes. *Id.* at 97-98. Plaintiff experienced these seizure-like episodes approximately twice per week, and she stopped working because of the seizure activity. *Id.* at 97, 102. Due to weak legs, she wobbles and loses her balance when she stands; therefore, she uses a cane to walk around the house, and she uses a three-wheel walker to walk outside. *Id.* at 98-99.

The vocational expert, Mr. Lessne, testified there is work for an individual with the following restrictions: a limitation to jobs that require simple, routine, repetitive

---

[1] This order references the pincite associated with the official document number. For instance, "Doc. 8-2 at 18" refers to Doc. 8-2, page 18 of 103.

tasks; requiring a break after two hours of concentration; no exposure to hazardous machinery; and no driving. *Id.* at 100-101. However, there is no competitive work for an individual with severe psychological reactions to past traumas that cause the individual to become motionless, shaky, unable to concentrate, unaware of their physical surroundings, and unresponsive for up to half an hour at unpredictable times, but at least two days per month. *Id.* at 101-102.

The ALJ made a decision that was unfavorable to Plaintiff, concluding she is not disabled under section 1614(a)(3)(A) of the Social Security Act and she is capable of performing work that existed in significant numbers in the national economy. *Id.* at 33. First, the ALJ determined Plaintiff has the following severe impairments: unspecified neurocognitive disorder also assessed as orthostatic tremor; depression; anxiety; post-traumatic stress disorder. *Id.* at 20. Next, the ALJ concluded Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). *Id.* at 21. Next, after considering the entire record, the ALJ found that Plaintiff has a residual functional capacity ("RFC") to perform light work as defined by 20 CFR 416.967(b), except that Plaintiff can perform only simple, routine, and repetitive tasks; can concentrate for two hours at a time before taking the standard morning, lunch, and afternoon breaks; there should be no exposure to hazardous machinery; and there should be no driving jobs. *Id.* at 23.  The ALJ based his finding regarding Plaintiff's RFC on Plaintiff's symptoms, to the extent that the symptoms were consistent with the objective medical evidence

and other evidence, and medical opinions and prior administrative medical findings. *Id.* at 23. The ALJ concluded that although Plaintiff's medically determinable impairments could be reasonably expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limited effects of the symptoms were not entirely consistent with the medical evidence and other record evidence. *Id.* at 24. Specifically, the ALJ determined that Plaintiff's claims that her "limitations are greater than those set forth in the residual functional capacity finding" are not consistent with or supported by the evidence. *Id.* at 30. The vocational expert testified that Plaintiff would be able to perform the requirements of the following occupations: cleaner/housekeeper, floor waxer, or marker. *Id.* at 33, 100-101.

Plaintiff sought review of the ALJ's decision by the Appeals Council, submitting additional medical records. *Id.* at 9. The Appeals Council declined review. *Id.* She then filed this action seeking review of the final administrative decision. Doc. 1. Plaintiff's overarching argument for requesting a reconsideration of the ALJ's decision is that the ALJ erred in failing to properly assess Plaintiff's psychogenic non-epileptic attacks. Plaintiff bases her argument on two alleged errors committed by the ALJ. First, the ALJ did not state whether seizures, psychogenic non-epileptic attacks, or the conversion disorder are medically determinable or severe impairments. Doc. 15 at 8, 11. Second, the ALJ did not discuss how Plaintiff's limitations from her psychogenic non-epileptic disorder affected the RFC. Doc. 15 at 9.

In response, the Commissioner of Social Security maintains that substantial evidence supports the ALJ's decision. Doc. 12. First, the Commissioner argues the

Court should reject Plaintiff's argument that the ALJ did not state whether the seizures were a medically determinable or severe impairment because the ALJ implicitly concluded that the seizures—no matter their underlying cause—were a medically determinable impairment when he stated: "seizure precautions are supported by the record." Doc. 18 at 7. Next, the Commissioner contends Plaintiff's challenge should be rejected because the ALJ is not required to specifically designate each impairment as "severe" or "non-severe," but instead, as long as an applicant has at least one severe impairment or combination of impairments, that, alone, is enough to allow the ALJ to proceed to the next step of the inquiry. *Id.* at 7. The Commissioner then argues the ALJ sufficiently discussed and analyzed Plaintiff's seizures, non-epileptic attacks, and conversion disorder. *Id.* at 8-11. Finally, the Commissioner argues the ALJ adequately addressed Plaintiff's seizure-induced limitations in the RFC determination, and the RFC determination was supported by substantial evidence. *Id.* at 12.

Magistrate Judge Griffin issued a Report and Recommendation ("R&R") recommending that the ALJ's decision be affirmed. Doc. 20. She concluded substantial evidence supports the ALJ's findings at steps two and three, and Plaintiff has not identified any harmful error. *Id.* at 5. Specifically, although the ALJ may not have precisely articulated the condition as "psychogenic non-epileptic attacks," the ALJ provided a thorough consideration of Plaintiff's symptoms and condition. *Id.* at 8. Next, the magistrate judge found that the ALJ properly assessed Plaintiff's RFC. *Id.* at 13. Specifically, the ALJ accounted for Plaintiff's limitations in the RFC, and

5

substantial evidence supported the ALJ's finding that Plaintiff suffered only mild limitations based on her mental impairments. *Id.* at 14-15.

In Plaintiff's Objection to the R&R, she asserts the magistrate judge misunderstood Plaintiff's argument and, therefore, the magistrate judge's analysis of step two and step three of the ALJ's decision are irrelevant. Doc. 22 at 1-2. Plaintiff then clarified that her argument is that the ALJ failed to consider Plaintiff's psychogenic non-epileptic attack impairment and its symptoms, and as a result, failed to properly assess Plaintiff's RFC. *Id.* at 2. The Commissioner responds by first highlighting that the magistrate judge properly analyzed the issues set forth in Plaintiff's merits brief. Doc. 23 at 3.  Next, the Commissioner contends that in Plaintiff's Objections to the R&R, Plaintiff reiterates the same arguments she made in her merits brief, namely, that the cause of Plaintiff's psychogenic non-epileptic seizures is psychological and that the ALJ failed to accommodate Plaintiff's non-seizure disorder when assessing the RFC. Doc. 23 at 3-4. The Commissioner maintains that substantial evidence supports the ALJ's finding that Plaintiff suffers only mild limits based on her mental impairments. *Id.* at 4. The Commissioner then invites the Court to rely on the arguments made in its merits brief. *Id.* at 4-5.

## II.   LEGAL STANDARD

Under the Federal Magistrates Act, Congress vests Article III judges with the power to "designate a magistrate judge to hear and determine any pretrial matter pending before the court," subject to various exceptions. 28 U.S.C. § 636(b)(1)(A). The Act further vests magistrate judges with authority to submit proposed findings of

fact and recommendations for disposition by an Article III judge. 28 U.S.C. § 636(b)(1)(B). After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify the magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); *Williams v. Wainwright*, 681 F.2d 732 (11th Cir. 1982). If specific objections to findings of facts are timely filed, the district court will conduct a *de novo* review of those facts. 28 U.S.C. § 636(b); *LoConte v. Dugger,* 847 F.2d 745, 750 (11th Cir. 1988). If no specific objections to findings of facts are filed, the district court is not required to conduct a *de novo* review of those findings. *See Garvey v. Vaughn,* 993 F.2d 776, 779 n.9 (11th Cir.1993); *see also* 28 U.S.C. § 636(b)(1). In that event, the district court is bound to defer to the factual determinations of the magistrate judge unless those findings are clearly erroneous. *Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994). Legal conclusions must be reviewed *de novo. Id*. Further, objections to a magistrate judge's report and recommendation must be "specific" and "clear enough to permit the district court to effectively review the magistrate judge's ruling." *Knezevich v. Ptomey*, 761 F. App'x 904, 906 (11th Cir. 2019).

## III.   DISCUSSION

Courts review a decision by the Commissioner of Social Security "to determine if it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm. Social Security*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a

reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderates against the Commissioner's findings, [the Court] must affirm if the decision reached is supported by substantial evidence." *Id.* at 1158-59 (citations and quotations omitted).

Here, upon a full and *de novo* review of the record and the magistrate judge's legal conclusions, the Court finds that substantial evidence supported the ALJ's decision that Plaintiff was not disabled at the time of the hearing. Contrary to Plaintiff's argument, neither the ALJ nor the magistrate judge failed to properly consider Plaintiff's psychogenic non-epileptic attack impairment and its symptoms, and the ALJ properly evaluated the RFC. Accordingly, the Court will adopt the R&R and affirm the ALJ's decision.

The Court will first address Plaintiff's assertion that the magistrate judge's analysis of step two and step three of the ALJ's decision is irrelevant and based on a misunderstanding of Plaintiff's argument. *See* Doc. 22 at 1-2. The Court is not persuaded by this argument. First, there is no meritorious distinction between what Plaintiff argues in her initial brief opposing the ALJ's decision at Doc. 15 and the revised argument Plaintiff submits at Doc. 22. In her initial brief, Plaintiff outlines her argument as follows: "Issue No. 1: Whether the ALJ erred in failing to assess the medically determinable impairment of psychogenic non-epileptic attacks." Doc. 15 at 2. Plaintiff goes on to explain: "[The ALJ] never articulated whether [the psychogenic non-epileptic attacks and the conversion disorder] were medically determinable impairments nor did he determine whether they were severe. Further, he never

included any limitations from Ms. Fletcher's psychogenic non-epileptic disorder in the RFC.  Nor did he ever consider whether this impairment caused any limitations." Doc. 15 at 9. By comparison, Plaintiff submits that her revised argument is: "The ALJ failed to consider [Plaintiff's] psychogenic non epileptic attack impairment and its symptoms, and as a result, failed to properly assess her RFC." Doc. 22 at 2. In both recitations of Plaintiff's argument, her argument rests on two theories: (1) the ALJ did not properly assess Plaintiff's psychogenic non-epileptic disorder, and (2) the ALJ did not properly assess the RFC. Hence, there is no substantial difference in the premises of Plaintiff's initial argument and her revised argument[2].

Secondly, the magistrate judge properly evaluated Plaintiff's argument through the analytical lens of step two and step three because Plaintiff implicated those portions of the ALJ's decision in her argument. In Plaintiff's initial brief, she stated, "[t]he ALJ then did not mention whether seizures were a medically determinable impairment or not. The ALJ also did not mention whether psychogenic non-epileptic attacks or conversion disorder were medically determinable impairments or not…[H]e never articulated whether these were medically determinable impairments nor did he determine whether they were severe." Doc. 15 at 8-9. Comparatively, at step two the

---

[2] Notably, if there were a substantial difference between the argument Plaintiff presented in her initial brief and the argument she presented in her response to the R&R, this Court has the discretionary authority to decline to hear any new argument that was not raised in Plaintiff's initial briefing. *See Williams v. McNeil*, 557 F.3d 1287 (11th Cir., 2009) (holding that the district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge but, rather, was raised in the party's objections to the magistrate judge's report and recommendation.)

ALJ is to "consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled." 20 C.F.R. §416.920(a)(4)(ii). *See also* 20 C.F.R. §416.921 ("After we establish that you have a medically determinable impairment(s), then we determine whether your impairment(s) is severe.") Because Plaintiff's argument concerns the issues of "medically determinable impairment" and "severity," and steps two and three of the ALJ's decision addresses those precise factors, the magistrate judge did not err in analyzing Plaintiff's argument within the framework of step two and step three.

**The ALJ properly assessed Plaintiff's psychogenic non-epileptic attacks, seizures, and conversion disorder.**

An ALJ must follow a five-step, sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520; *Tuggerson-Brown v. Comm'r of Soc. Sec.,* 572 F. App'x 949, 950 (11th Cir. 2014). At step one, if the ALJ determines the claimant is engaged in substantial gainful activity, then the ALJ must find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ considers the medical severity of the claimant's impairments. If the ALJ finds that the applicant does not have a severe medically determinable impairment or combination of impairments, then she should conclude there is no disability. 20 C.F.R. § 404.1520(a)(4)(ii); *Tuggerson-Brown v. Comm'r of Soc. Sec.,* 572 F. App'x 949, 950 (11th Cir. 2014). There is no need for an ALJ to identify whether every alleged impairment is "severe" at step two. *Tuggerson-*

*Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014). Instead, to proceed to step three, an ALJ only needs to conclude that at least one impairment is severe. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014). In the present case, the ALJ articulated four severe medically determinable impairments: unspecified neurocognitive disorder also assessed as orthostatic tremor, depression, anxiety, and post-traumatic stress disorder. *See* Doc. 8-2 at 20. Therefore, it is of no consequence that the ALJ did not specify whether Plaintiff's seizures, psychogenic non-epileptic attacks, or conversion disorder were severe, medically determinable impairments because he identified four other impairments as medically determinable and severe. *See Id.* The ALJ's identification of those four medical impairments as severe was sufficient to permit the analysis to advance to step three.

Moreover, while performing the latter steps of the five-step evaluation, the ALJ is required to consider all impairments, regardless of their severity, in conjunction with one another. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014). An ALJ's statement that he evaluated whether the applicant had an "impairment or combination of impairments" that met a listing and that he considered "all symptoms" in determining the RFC is sufficient to show that the ALJ considered all the necessary evidence.

Here, the ALJ stated Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." Doc. 8-2 at 21. Further, at step three, the ALJ then expounds that neither Plaintiff's physical impairment nor **her mental impairments ("considered**

**singly and in combination")** meet or medically equal any of the listings. *Id.* at 20-21 (emphasis added). The ALJ then thoroughly details the four functional areas[3] he used to analyze Plaintiff's mental impairments. Doc. 8-2 at 21-22. Equally important, the ALJ explicitly references symptoms of Plaintiff's "non-psychogenic" seizures in step four of the analysis. Doc. 8-2 at 24. Therefore, assuming *arguendo* that the ALJ erred at step two by failing to identify Plaintiff's seizures, psychogenic non-epileptic attacks, or the conversion disorder as "severe," such a purported error is of no effect because he later considered all of Plaintiff's symptoms in steps three and four of the five-step analysis. *See Burgin v. Comm'r of Soc. Sec.,* 420 F. App'x 901, 903 (11th Cir. 2011) (If an ALJ is incorrect in concluding that an applicant's impairment is not severe, such error is harmless as long as the ALJ considers all of the applicant's impairments in combination at later steps of the evaluation process.)

In short, Plaintiff is correct that the ALJ did not specifically state, "I considered claimant's psychogenic non-epileptic attacks, seizures, and conversion disorder." However, the ALJ's assertions that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments he considered," and that he considered "her mental impairments singly and in combination" are sufficient to demonstrate that he considered not only the mental impairment identified as severe in step two, but also other mental

---

[3] The four functional areas the ALJ discusses are (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. Doc. 8-2 at 21-22.

impairments that were not specifically mentioned—including the psychogenic non-epileptic attacks, seizures, and conversion disorder.

### The ALJ properly considered how Plaintiff's limitations and symptoms from the psychogenic non-epileptic disorder affected the RFC.

At step four, the ALJ considers his assessment of the applicant's RFC and past relevant work to determine whether the applicant can return to her former work. 20 C.F.R. § 404.1520(a)(4)(iv); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014). In determining RFC, the ALJ considers all medically determinable impairments and an applicant's medical condition as a whole. 20 C.R.F. § 404.1545(a)(2); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014); *Schink v. Comm'r of Soc. Sec.,* 935 F.3d 1245, 1269 (11th Cir. 2019). However, it is not enough for an ALJ to simply state he "considered all symptoms." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019). Instead, the content of the ALJ's decision must demonstrate he weighed all of the applicant's impairments to form his conclusion about the RFC. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019).

Here, although the ALJ does not specifically use the phrase, "non-epileptic disorder" or "non-epileptic attack impairment," the ALJ evaluated all symptoms of Plaintiff's impairments and considered her medical condition as a whole, including the non-epileptic attacks. For instance, while assessing the RFC, the ALJ refers to Plaintiff's symptoms as "episode[s]" and a "questionable seizure." Doc. 8-2 at 30. Also, the ALJ explicitly acknowledges that Plaintiff's "diagnoses have been non-

specific" and that Plaintiff's symptoms have led to her seeking evaluations from neurology, cardiology, an ENT specialist and a primary care to determine the cause of Plaintiff's episodes. Doc. 8-2 at 30. Such rhetoric implies the ALJ is aware that there are different labels that may be attached to Plaintiff's symptoms, yet the ALJ considered Plaintiff's symptoms as a whole, no matter the underlying medical cause or official moniker. *See Garland v. Ming Dai*, 593 U.S. 357, 369 (2021) (explaining that an agency need not use any "magic words" to overcome an appeal, but instead, a reviewing court must uphold the decision if the agency's rationale can be reasonably discerned). Hence, based on the ALJ's detailed analysis and summary of Plaintiff's medical records, it is clear he considered Plaintiff's medical condition as a whole, including any symptoms that may be labeled as a "psychogenic non-epileptic disorder," even if he did not include that particular medical terminology in his decision.

Moreover, at step two, the ALJ not only identified Plaintiff's severe impairments, but he also explained that the limitations from Plaintiff's non-severe impairments were minimal and would be accommodated for in the RFC by a "light lifting and carrying limitation." Doc. 8-2 at 20-21.

Furthermore, at step three, the ALJ evaluated both Plaintiff's physical and mental impairments by comparing them to the listed impairments. In fact, the ALJ explicitly articulates that he evaluated all of Plaintiff's mental impairments, both "singly and in combination" by comparing them with the criteria of listings in 12.04, 12.06, and 12.15. Doc. 8-2 at 21. The remainder of the discussion at step three then

explains the exact 4-part analysis[4] the ALJ undertook in evaluating all of Plaintiff's mental impairments. *Id.* at 21-22.

Also, throughout step four, the ALJ thoroughly analyzes all the symptoms reported by Plaintiff—both from her medical records and her hearing testimony. Specifically, the ALJ considers: Plaintiff's "episodes of shaking," which she also describes as "spells" where she gets wobbly and where she will shake all over while sitting down" (Doc. 8-2 at 24); two falls since her seizure a year prior (*Id.* at 28); multiple reports from neurologists and psychiatrists (*Id.* at 28-29); a recommendation from a neurologist that she should see a psychiatrist because it did not appear that Plaintiff was having seizures, but instead, a conversion disorder (*Id.* at 28); and "episodes of whole body shaking and altered awareness" (*Id.* at 28). In turn, the ALJ demonstrated he considered all of Plaintiff's impairments—no matter their official moniker or underlying cause—when he explained, at step four, that the suggested work modifications would adequately accommodate Plaintiff's "reported symptoms and observed abnormalities," and were "based on the findings of the consulting psychologists." Doc. 8-2 at 30.

Based on the information provided, the ALJ did not err in rendering a decision that was unfavorable to Plaintiff. Because the ALJ's decision that Plaintiff is not disabled was supported by substantial evidence, it must be affirmed.  It is therefore **ORDERED**:

---

[4] *See supra* note 2.

1. The Report and Recommendation of the Magistrate Judge (Doc. 20) is **ADOPTED**, **CONFIRMED**, and **APPROVED** in all respects and is made a part of this Order for all purposes, including appellate review.

2. The decision of the Commissioner of Social Security denying Plaintiff's claim for supplemental security income benefits is **AFFIRMED.**

3. The Clerk is directed to enter judgment in favor of the Commissioner of Social Security and against Plaintiff Karen Fletcher.

4. The Clerk is directed to close this case.

**DONE** and **ORDERED** in Tampa, Florida on March 19, 2026.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties

16